SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

MOLLY JENNINGS (*pro hac vice*)
molly.jennings@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6443

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DASH.FI TECHNOLOGIES INC.,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:26-cv-11130-RFL<br><br>**DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS**<br><br>Date: February 2, 2027<br>Time: 10:00 AM<br>Place: Courtroom 4 |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ....... 1
MEMORANDUM OF POINTS AND AUTHORITIES ....... 1
BACKGROUND ....... 2
ARGUMENT ....... 2
I. DASH.FI'S LANHAM ACT CLAIM FAILS (COUNT I) ....... 2
A. Meta's Statements Are Not "Commercial Advertising Or Promotion" ....... 3
B. The Statements Are Not Actionable Statements Of Fact ....... 4
C. Dash.fi Does Not Plead The Statements Proximately Caused Injury ....... 5
D. Dash.fi Does Not Plead The Statements With Particularity Under Rule 9(b) ....... 6
II. DASH.FI'S TORTIOUS INTERFERENCE CLAIMS FAIL (COUNTS II AND III) ....... 7
A. Neither Claim Pleads An Independently Wrongful Act ....... 7
1. The Card Ban And Blocks Are Not Independently Wrongful ....... 7
2. The Statements Are Not Independently Wrongful ....... 8
3. Meta's Purported Motives Are Not Independently Wrongful ....... 9
B. Count III Does Not Allege Probable Prospective Economic Benefits ....... 9
III. DASH.FI'S UCL CLAIM FAILS (COUNT IV) ....... 10
A. Dash.fi Does Not Plead A UCL Unlawful Prong Claim ....... 10
B. Dash.fi Does Not Plead A UCL Unfair Prong Claim ....... 10
C. Dash.fi Does Not Plead A UCL Fraudulent Prong Claim ....... 13
IV. DISMISSAL SHOULD BE WITH PREJUDICE ....... 14
CONCLUSION ....... 15

## TABLE OF AUTHORITIES

Page(s)

### CASES

*23andMe, Inc. v. Ancestry.com DNA, LLC*,
356 F. Supp. 3d 889 (N.D. Cal. 2018) ....................6, 14

*Alfasigma USA, Inc. v. First Databank, Inc.*,
398 F. Supp. 3d 578 (N.D. Cal. 2019) ....................3

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019) ....................14

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*,
108 F.3d 1147 (9th Cir. 1997) ....................13

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ....................3, 4, 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985) ....................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................11

*Bodenburg v. Apple Inc.*,
146 F.4th 761 (9th Cir. 2025) ....................13

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ....................10, 11

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ....................6, 7, 8

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ....................8, 9

*Dey v. Robinhood Markets, Inc.*,
780 F. Supp. 3d 882 (N.D. Cal. 2025) ....................15

*Dreamstime.com, LLC v. Google LLC*,
54 F.4th 1130 (9th Cir. 2022) ....................12

*Edwards v. MUBI, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025) ....................10

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
69 F.4th 665 (9th Cir. 2023) ....................5

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ....................12

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
314 F.3d 48 (2d Cir. 2002)....................4

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ....................11, 12

*George v. eBay, Inc.*,
71 Cal. App. 5th 620 (2021) ....................9

*Good Meat Project v. GOOD Meat, Inc.*,
716 F. Supp. 3d 783 (N.D. Cal. 2024) ....................2, 4

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
2005 WL 832398 (N.D. Cal. Mar. 30, 2005)....................9

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ....................10

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ....................11

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ....................12

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ....................14

*Honey Bum, LLC v. Fashion Nova, Inc.*,
63 F.4th 813 (9th Cir. 2023) ....................8

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal. 5th 1130 (2020) ....................7

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................7

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................4

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ....................7, 9

*KT Enters. LLC v. Comp360, LLC*,
751 F. Supp. 3d 999 (C.D. Cal. 2023) ....................14

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011) ....................14

*Lange v. TIG Ins. Co.*,
68 Cal. App. 4th 1179 (1998) ....................10

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) ....................13

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) ....................11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....................5

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*,
271 F.3d 825 (9th Cir. 2001) ....................8

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
513 F.3d 1038 (9th Cir. 2008) ....................4

*Ollywan Ltd. v. Meta Platforms, Inc.*,
2026 WL 2548622 (N.D. Cal. Aug. 28, 2026) ....................11

*Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*,
268 F. Supp. 3d 1071 (C.D. Cal. 2017) ....................9

*Prager Univ. v. Google LLC*,
951 F.3d 991 (9th Cir. 2020) ....................3, 4, 5

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
769 F. Supp. 3d 1067 (N.D. Cal. 2025)....................4

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990) ....................14

*Republican Nat'l Comm. v. Google LLC*,
742 F. Supp. 3d 1099 (E.D. Cal. 2024)....................8

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) ....................10

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004)....................7, 11

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....................6

*x.AI Corp. v. OpenAI, Inc.*,
2026 WL 1718645 (N.D. Cal. June 15, 2026)....................15

*x.AI Corp. v. OpenAI, Inc.*,
821 F. Supp. 3d 1100 (N.D. Cal. 2026) .......... 10

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C. § 1125(a)(1)(B) .......... 3

Cal. Bus. & Prof. Code § 17200 .......... 10

Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 12(b)(6) .......... 1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on February 2, 2027 at 10:00 AM, in Courtroom 4, Defendant Meta Platforms, Inc. ("Meta") will, and hereby does, move to dismiss with prejudice the Complaint under Federal Rule of Civil Procedure 12(b)(6). The issues to be decided are whether the four counts plausibly state a claim and whether dismissal should be with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

This Court has already recognized that Meta has wide latitude to refuse to deal with Dash.fi, including by restricting its Meta access and deciding not to accept the Dash.fi Card. Dkt. 37 at 10, 12 ("Order"). It has also recognized that statements that Meta allegedly made to Dash.fi customers did not cause the harm that Dash.fi seeks to enjoin and are likely not promotional under the Lanham Act. *Id.* at 8-9 & n.3. For these reasons and others, Dash.fi's attempt to repackage Meta's ordinary business decisions into false advertising, tortious interference, and UCL claims fails.

First, Dash.fi cannot state a claim under the Lanham Act for false advertising. The statements that Dash.fi challenges are not commercial promotion covered by the Act. Dash.fi also does not plausibly allege that the statements are false or misleading or plead them with particularity. Furthermore, Dash.fi cannot plausibly allege proximate cause because it pleads that Meta's decisions to no longer accept the Card, block Dash.fi's access, and decline the Card—not what Meta said—caused Dash.fi's losses.

Second, both tortious interference claims must be dismissed because Dash.fi has identified no independently wrongful act. Meta's refusal to accept the Card was lawful, and Meta's statements do not violate any cognizable legal standard. Nor does Dash.fi plead that Meta interfered with or knew about Dash.fi's probable future economic relationships.

Third, Dash.fi has not pleaded a claim under any of the three prongs of the UCL. Its "unlawful" theory rests on legal predicates not adequately pleaded. Its "unfair" theory alleges harm to Dash.fi, not harm to competition, and pleads no relevant market, monopoly power, or antitrust violation. *See* Order at 11-12. And its "fraudulent" theory does not identify any specific deception, actual reliance on deception, or a duty to disclose.

Dash.fi already had the opportunity to show why it was likely to succeed on these claims

when it moved for a preliminary injunction supported by over eight hundred pages of declarations and exhibits. No revision to the Complaint or additional evidence can change the fact that the law does not impose on Meta a duty to deal with Dash.fi absent specific circumstances not present here. And no plausible allegation exists that can transform Meta's statements to individual Dash.fi Cardholders about its lawful decisions to decline and later to no longer accept the Dash.fi Card into statements actionable under the Lanham Act, the UCL, or state tort law. Dismissal should therefore be with prejudice.

## BACKGROUND

Dash.fi offers a Mastercard-branded credit card that its customers use to pay for Meta advertising, among other things. Compl. ¶¶ 3, 12. Through its "Ad Pay Protection" feature, Dash.fi purports to audit Meta invoices and pursues chargebacks for ad spend that it disputes. *Id.* ¶ 3. Since 2025, Dash.fi has pursued around 11,800 chargebacks, totaling $39 million. *Id.* ¶¶ 15, 24.

In 2025, Meta began to decline the Dash.fi Card and block associated bank identification numbers. *Id.* ¶¶ 19, 25. In early 2026, Meta told some Dash.fi Cardholders to switch to monthly invoicing. *Id.* ¶ 32. In August and September 2026, Meta announced it would no longer accept the Card or cards from the Card's issuing banks (e.g., TransPecos). *Id.* ¶¶ 38, 44, 47. On September 23, Meta restricted Dash.fi's accounts and API access, *id.* ¶ 48. The next day, it sent a cease-and-desist letter, stating Dash.fi was facilitating "mass unauthorized chargebacks." *Id.* ¶ 50.

Dash.fi filed this action on September 29, 2026, asserting four claims: Lanham Act false advertising (Count I), intentional interference with contractual relations (Count II) and with prospective economic relations (Count III), and violation of California's Unfair Competition Law ("UCL") (Count IV). Compl. ¶¶ 54-86. Dash.fi moved for a preliminary injunction, which the Court denied. Dkt. 37.

## ARGUMENT

### I. DASH.FI'S LANHAM ACT CLAIM FAILS (COUNT I)

To state a false advertising claim under the Lanham Act, a plaintiff must plead that a defendant "made a false statement of fact in a commercial advertisement." *Good Meat Project v. GOOD Meat, Inc.*, 716 F. Supp. 3d 783, 808 (N.D. Cal. 2024). Dash.fi's claim challenges five

alleged statements that Meta made to Dash.fi Cardholders from October 2025 to September 2026: (1) Card declines were "on the processing side and not [Meta's]," Compl. ¶ 28; (2) the Card was a "Risk Payment – confirmed compromise," *id.* ¶ 39; (3) the Card "violates [Meta's] policies," *id.* ¶ 40; (4) Dash.fi is a "virtual bank" and did not meet verification checks, *id.* ¶ 41; and (5) the Card is a "suspicious payment method," *id.* ¶ 45.[1] This claim fails for multiple reasons.

### A. Meta's Statements Are Not "Commercial Advertising Or Promotion"

The Lanham Act only applies to speech "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). As a result, qualifying speech must (1) be promotional and made "for the purpose of influencing consumers to buy defendant's goods or services" and (2) be "sufficiently disseminated to the relevant purchasing public." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021). Neither requirement is met here.

First, the Court's skepticism that the challenged statements satisfy the promotional-purpose requirement, Order at 9 & n.3, was well-placed. The statements are not promotional. A platform's "statements concerning [application of] its . . . policies do not constitute 'commercial advertising or promotion' as the Lanham Act requires." *Prager Univ. v. Google LLC*, 951 F.3d 991, 999-1000 (9th Cir. 2020). Moreover, the at-issue statements do not promote any Meta product. They address *Dash.fi's* Card, "not [Meta's] own goods or services." *Alfasigma USA, Inc. v. First Databank, Inc.*, 398 F. Supp. 3d 578, 591 (N.D. Cal. 2019); *cf.* Order at 9 n.3. At most, one statement directs an advertiser to "use a clean payment method or switch to Line of Credit." Compl. ¶ 45. But a merchant's request that a customer use a different payment method for a product that it already purchases is not promotional. It is logistical. Dash.fi's fallback that Meta sought to "drive advertisers toward Meta's own advertising credit lines," which are a "competing credit product," *id.* ¶¶ 5, 81(b), is little more than a conclusion, unsupported by any facts that would permit the Court to conclude that Meta's alleged line of credit competes with Dash.fi's Card. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Second, the statements were not subject to "widespread dissemination within the relevant

---

[1] Count I lists the last four statements, Compl. ¶ 57. Dash.fi additionally relied on the first statement at the preliminary injunction hearing, *see* Order at 8, so Meta addresses it here.

industry." *Ariix*, 985 F.3d at 1121 (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002)). None was allegedly "made available to the public." *Prager*, 951 F.3d at 1000. Instead, Dash.fi alleges that the statements were made at most to six advertisers (out of hundreds of alleged Dash.fi Cardholders, *see* Compl. ¶ 53) about their own accounts over eleven months, *id.* ¶¶ 28, 39-41, 45, 61. Even if Dash.fi's allegations of harm were not deficient, "businesses harmed by isolated disparaging statements do not have redress under the Lanham Act." *Fashion Boutique*, 314 F.3d at 57. A claim resting on a "handful of private statements to [plaintiff's] actual or prospective customers" fails. *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 769 F. Supp. 3d 1067, 1097 (N.D. Cal. 2025). Indeed, this Court has already held that Dash.fi's contention that Meta waged a "continuous and widespread" campaign of misleading statements "is not supported," even with the benefit of evidence outside the Complaint. Order at 8.

### B. The Statements Are Not Actionable Statements Of Fact

The Lanham Act only reaches "false statement[s] of fact." *Good Meat*, 716 F. Supp. 3d at 808. An actionable statement must contain "a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Ariix*, 985 F.3d at 1121 (citation omitted). Courts may decide whether a statement qualifies on a motion to dismiss. *See Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008).

None of the statements meet this standard. First, Dash.fi claims that Meta falsely called it a "virtual bank," but the full statement (incorporated by reference, *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)) shows otherwise. In declining to add a Dash.fi Card to an account, Meta allegedly stated to one Cardholder "that some virtual banks may not support" "verification checks" and "verification can't be completed." Dkt. 14-17 at 2. Meta did not assert Dash.fi is a "virtual bank" or even mention Dash.fi, but instead referenced one circumstance when "verification can't be completed." At most, Meta conveyed the Card did not pass Meta's verification check—an assertion whose truth Dash.fi does not dispute. Compl. ¶ 41.

Dash.fi also has not established that the alleged statements that the Dash.fi Card "violates [Meta's] policies," is a "suspicious payment method," or is a "Risk Payment – confirmed compromise," Compl. ¶¶ 39, 40, 45, are actionable. Each communicates Meta's judgment about

how its policies apply and what payments to accept. Such descriptions of account designations are not actionable. *Prager*, 951 F.3d at 1000 (holding that YouTube's application of content moderation policies to "certain [user] videos" was non-actionable). Nor does Dash.fi plead "falsifiable criteria" against which to test the truth or falsity of these three statements. *Cf. Ariix*, 985 F.3d at 1122. Just as the Ninth Circuit held that a company designating a software program as "potentially unwanted" under its policies was "too unspecific to provide a basis for a Lanham Act claim," the determination that a particular payment method is "suspicious" or a "risk" reflects Meta's judgment, not a verifiable fact. *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 672 & n.3 (9th Cir. 2023). These statements contrast, for example, with "a cybersecurity company in the business of identifying malware for its customers" designating software as malware, because that designation conveys the "factual assertion" that the software "contain[s] malicious files." *Id.* at 672.

Finally, the statement that Card declines are "on the processing side and not [Meta's]," Compl. ¶ 28, is not actionable, because this phrase is both "too unspecific" and ambiguous on its face. *Enigma*, 69 F.4th at 672. "[C]ontext is paramount" to reliably "assess[ing] whether a statement implies a factual assertion," "because the reasonable interpretation of a word can change depending on the context." *Id.* (internal quotations and alterations omitted). As with the other alleged statements, Dash.fi omits all context, and obscures the term that it substituted with "Meta" in brackets, making it impossible to discern whether the statement's facial ambiguity was clarified in context.

**C. Dash.fi Does Not Plead The Statements Proximately Caused Injury**

To establish proximate cause under the Lanham Act, Dash.fi must plead "economic or reputational injury flowing directly from the deception," which "occurs when deception of consumers causes them to withhold trade." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014); Order at 10. Dash.fi has not done so.

The Complaint does not plausibly plead that *deception* proximately caused Dash.fi's customer losses or harm to its reputation and customer goodwill. Instead, it attributes Dash.fi's losses to Meta's decisions not to accept the Dash.fi Card or to suspend Dash.fi's Meta access.

Cardholders left "due to the issues caused by Meta continually blocking the Dash.fi Card," Compl. ¶ 31, or because they were "fearing Meta advertising account and campaign suspensions," *id.* ¶ 35. Prospective Cardholders walked away "after hearing from Meta representatives that the Dash.fi Card was not accepted on Meta's platforms," *id.* ¶ 36. *See also* Compl. ¶¶ 28, 39-41, 45. One customer allegedly stopped using the Card because it feared "trigger[ing] a fraud alert and shut down [of its] account." *Id.* ¶ 28. But even this allegation shows that the customer was reacting to the prospect of Meta's enforcement rather than to purported deception in Meta's statements. The Complaint also includes the boilerplate allegation that "[c]ustomers who received these statements switched to alternative payment methods, ceased using the Dash.fi Card, or declined to adopt it," but does not plausibly plead that any deception caused these customers to act. *Id.* ¶ 58. Although the Court noted that the "evidence does not show that these statements led to anything more than the departure of the customers contacted," Order at 8, it did so only in the context of concluding that Dash.fi had not demonstrated irreparable harm, and elsewhere noted that Dash.fi "does not link the customers' concerns to the challenged statements," *id.* at 9.

**D. Dash.fi Does Not Plead The Statements With Particularity Under Rule 9(b)**

Dash.fi has not pleaded its Lanham Act claim with the particularity that Rule 9(b) requires. Lanham Act claims "predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation" are subject to Rule 9(b). *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (claim "grounded in fraud" or "fraudulent conduct" is subject to Rule 9(b)).

That is what Dash.fi alleges: a "retaliatory campaign" and "continued scheme" of "willful" and "misleading" statements "with specific intent to disrupt Dash.fi's business." Compl. ¶¶ 5, 57, 61. Dash.fi thus must plead "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citation omitted).

The Complaint falls far short. Dash.fi does not identify "who" made or received any statement: The speaker is "Meta" broadly or "[a] Meta representative." Compl. ¶¶ 28, 39-41, 45. The recipients are either "one" advertiser, "an advertiser," "two of Dash.fi's biggest spenders,"

"another advertiser," or "one of these advertisers." *Id*. Dash.fi also does not plead "what" each statement conveyed. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (misrepresentations not pled with particularity where plaintiff did not allege what materials "specifically stated"). The Complaint does not quote the August 15, 2026 statement and describes it inconsistently. *Compare* Compl. ¶ 40 ("the Dash.fi Card violates its policies"), *with id.* ¶ 57 ("Dash.fi and its customers violated Meta's policies"). As the Court recognized, for the October 2025 statement, even Dash.fi's sworn account did not "provide a copy of the actual communication or provide the name of the person who made it" and was "presumably based on the customer's retelling." Order at 3, 8. Nor does Dash.fi identify "where" Meta transmitted the challenged statements: It never says whether any statement was in an automated notice, an email, a chat, or a call. Finally, Dash.fi nowhere explains "why" or "how" each statement is false or misleading, *supra* Part I.B, and instead offers only the conclusory refrain that "[e]ach statement was false when made." Compl. ¶ 57; *see id.* ¶¶ 39, 40, 45. That is not enough. *Davidson*, 889 F.3d at 964.

## II. DASH.FI'S TORTIOUS INTERFERENCE CLAIMS FAIL (COUNTS II AND III)

Both tortious interference claims arise from the same alleged "wrongful conduct": (1) Meta's decisions to stop accepting the Dash.fi Card and suspend Dash.fi's platform access (Compl. ¶¶ 67(b)-(g), 75(b)-(g)) and (2) Meta's statements about Dash.fi (*id.* ¶¶ 67(a), 75(a)). Both claims fail because this conduct is not independently wrongful. Count III also fails because Dash.fi does not plead it had probable prospective economic relations with which Meta interfered.

### A. Neither Claim Pleads An Independently Wrongful Act

"Both tortious interference claims require . . . an independently wrongful act." Order at 10; *see Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1142, 1148 (2020) (required for alleged interference with at-will contracts). An "independently wrongful act" is conduct that violates "some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003).

#### 1. The Card Ban And Blocks Are Not Independently Wrongful

This Court has held that Meta's decisions to no longer accept the Dash.fi Card and suspend Dash.fi's access are not likely "independently wrongful" because "[c]ompanies have wide latitude

in refusing to deal with other companies." Order at 10 (citing *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004)). A refusal to deal is "presumptively valid . . . absent some unlawful element." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 834 (9th Cir. 2001). Dash.fi has identified none. *See infra* Part III.B.

**2. The Statements Are Not Independently Wrongful**

Dash.fi claims that the challenged statements are also independently wrongful because they violate one of the Lanham Act, the UCL, or California's False Advertising Law. Compl. ¶¶ 67(a), 75(a); Dkt. 27 at 12-13. The statements violate none of those provisions.

***Lanham Act.*** As Part I explains, the statements cannot sustain a Lanham Act claim. Thus, this claim "cannot provide a source of independent unlawfulness" for the interference claims. *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 824 (9th Cir. 2023).

***UCL.*** The UCL claim also "cannot form the basis of the intentional interference claim" because it is not well-pled, *infra* Part III. *Republican Nat'l Comm. v. Google LLC*, 742 F. Supp. 3d 1099, 1121 (E.D. Cal. 2024). Moreover, the UCL claim rests in part on the deficient interference torts, Compl. ¶ 82. A plaintiff "may not 'bootstrap' its claims on one another by asserting that the intentional interference violates the UCL, and then relying on that UCL violation to support its intentional interference claim." *Republican Nat'l Comm.*, 742 F. Supp. 3d at 1114.

***False Advertising Law.*** In Dash.fi's preliminary injunction reply, it claimed for the first time that California's False Advertising Law ("FAL") supplies an independently wrongful act. Dkt. 27 at 12-13. The Complaint does not plead this theory and only references FAL in passing in the list of UCL predicates, Compl. ¶ 82. In any case, the Complaint does not plausibly allege a FAL violation, which requires showing a false or misleading statement in advertising "likely to deceive a reasonable consumer" and that "induce[d]" detrimental reliance by the consumer. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1161-62 (9th Cir. 2012) (citation omitted); *see* Order at 9 & n.3. Where, as here, the FAL claim sounds in fraud, the misrepresentation must be pled with particularity. *Davidson*, 889 F.3d at 964; Dkt. 27 at 13 (Dash.fi arguing FAL theory "rests . . . on [Meta's] false statements and deceptive practices"). Dash.fi does not satisfy any of these requirements. It does not plead the statements were made in advertising or were false or

misleading. *Supra* Part I. It does not plead reliance, because it fails to allege that any purported fraud "induce[d]" customers to depart. *Davis*, 691 F.3d at 1161 (citation omitted); *supra* Part I.C. And its allegations regarding the statements do not satisfy Rule 9(b). *Supra* Part I.D.

**3. Meta's Purported Motives Are Not Independently Wrongful**

Finally, Dash.fi alleges that "Meta's conduct was independently wrongful" because it was "retaliatory, and specifically designed to eliminate advertisers' ability to dispute fraudulent charges." Compl. ¶ 76; *see id.* ¶ 68. Beyond not plausibly pleading that Meta had these "retaliatory" motives, an act "is not independently wrongful merely because defendant acted with an improper motive." *Korea Supply*, 29 Cal. 4th at 1158.

**B. Count III Does Not Allege Probable Prospective Economic Benefits**

Count III independently fails because the Complaint does not plead that Meta knew about or interfered with Dash.fi's "relationship[s]" with third parties with "probab[le] . . . future economic benefit." *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2005 WL 832398, at *8 (N.D. Cal. Mar. 30, 2005). The Complaint relies on the boilerplate allegation that "Dash.fi had prospective contractual and economic relationships with current and potential Dash.fi Card users, as well as with advertising agencies and other third parties." Compl. ¶ 74. Dash.fi does not specify what these thwarted future opportunities were, what made the future economic benefit probable, or how Meta knew about them. Pointing to current customers is insufficient. *Am. Blind & Wallpaper Factory*, 2005 WL 832398, at *9 (rejecting allegations of "repeat customers" as too speculative, because they show only "unspecified future sales to unspecified returning customers," not the "*promise* of future economic advantage" (citation omitted)); *see Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1090 (C.D. Cal. 2017) ("general averment" that plaintiff "had relationships with its customers and prospective customers" is insufficient (citation omitted)); *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 639 (2021) ("[m]erely referring to unidentified 'repeat buyers' is insufficient"). And "it goes without saying that [plaintiff's] even more speculative allegations regarding 'new' customers" without more do not plead this element. *Am. Blind & Wallpaper Factory*, 2005 WL 832398, at *9.

## III. DASH.FI'S UCL CLAIM FAILS (COUNT IV)

"To bring a UCL claim, a plaintiff must show . . . [an] 'unlawful, unfair, or fraudulent business act or practice[.]'" *Edwards v. MUBI, Inc.*, 773 F. Supp. 3d 868, 885 (N.D. Cal. 2025) (citing Cal. Bus. & Prof. Code § 17200). Because the UCL unlawful prong and UCL fraudulent prong claims "arise out of the alleged misstatements," Order at 11, they fail for the reasons the other statements-based claims fail. The UCL unfair prong claim is not plausibly pleaded.

### A. Dash.fi Does Not Plead A UCL Unlawful Prong Claim

To plead a claim under the "unlawful" prong, a plaintiff must allege a "violation[] of other laws," which the UCL "borrows" and "makes independently actionable." *x.AI Corp. v. OpenAI, Inc.*, 821 F. Supp. 3d 1100, 1112 (N.D. Cal. 2026) (citation omitted). "If a plaintiff cannot state a claim under the predicate law, . . . [the UCL] claim also fails." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (citation omitted). Dash.fi claims predicate violations of the Lanham Act, intentional and negligent interference with economic relations, the FAL, and "Mastercard Rules governing merchant acceptance." Compl. ¶ 82. None suffices.

The Lanham Act, intentional interference, and FAL predicates fail for the reasons discussed in Parts I and II. The Complaint also does not plead negligent interference: it does not allege any duty of care or "independently wrongful" conduct as required. *Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1187 (1998) ("For negligent interference, a defendant's conduct is blameworthy only if it was independently wrongful[.]"); *supra* Part II.A.

As for "the Mastercard Rules governing merchant acceptance," Compl. ¶ 82, those rules are not law, and therefore, cannot support an unlawful prong claim. And although Dash.fi has not alleged the violation of these rules supports a contract claim, "a common law violation such as breach of contract" cannot support an unlawful-prong claim in any case. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).

### B. Dash.fi Does Not Plead A UCL Unfair Prong Claim

To state a claim under the UCL's unfair prong, a plaintiff must plead that the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws . . . , or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v.*

*L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Dash.fi's "very general allegation" that Meta harmed competition "does not satisfy *Cel-Tech*'s requirement that the effect of [Meta's] conduct amounts to a violation of antitrust laws 'or otherwise significantly threatens or harms competition.'" Order at 12 (quoting *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1137 (9th Cir. 2014)).

Dash.fi's theory has shifted substantially over the short course of this litigation. The only reference to competition in the Complaint is Dash.fi's conclusory allegation that Meta's credit line is a "competing credit product" to Dash.fi's Card. Compl. ¶ 81(b). Perhaps in recognition that the bare allegations of the Complaint fell far short, Dash.fi took a different approach in its reply to the preliminary injunction, arguing for the first time that Meta's conduct "violates the policy and spirit of Section 2 of the Sherman Act" for three different reasons. Dkt. 27 at 15. However framed, this theory fails at the threshold. A Section 2 claim requires pleading "monopoly power in the relevant market," *Trinko*, 540 U.S. at 407, including alleging a "geographic market and a product market," *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (citation omitted). The Complaint does not refer to any geographic market and only vaguely refers to two product markets. Dash.fi first claims that Meta has a "dominant share" in "the digital advertising market," Compl. ¶¶ 1, 16, but pleads nothing about that market's boundaries or substitutes, other than that Google is "Meta's competitor," *id.* ¶ 18, and nothing about Meta's share beyond the word "dominant." *See Ollywan Ltd. v. Meta Platforms, Inc.*, 2026 WL 2548622, at *13 (N.D. Cal. Aug. 28, 2026) (merely stating company has "dominant share" does not plead monopoly); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (plausible allegation "requires more than labels and conclusions"). Moreover, this Court has already found, even with the opportunity to present evidence, that Dash.fi failed to "show[] that 'Meta dominates the digital advertising market'" which "alone forecloses serious questions as to" the unfair competition theory. Order at 11 (citation omitted). The Complaint also alludes to a market "among payment-card issuers," Compl. ¶ 83, but does not define that market or allege Meta has any share of it, let alone a monopoly. Nor would Dash.fi or Meta compete in such a market: Dash.fi does not plead either Dash.fi or Meta is a card issuer. *Id.* ¶¶ 3, 12, 41. Dash.fi's failure to plead monopoly power in any relevant market dooms this claim.

Dash.fi also does not plead any conduct that "significantly threatens or harms competition."

*Cel-Tech*, 20 Cal. 4th at 187. "Injury to a competitor is not equivalent to injury to competition," *id.* at 186, and "harm to one or more competitors will not suffice," *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) (citation omitted). The only injury pleaded with any factual support is Dash.fi's. Compl. ¶ 85. A platform's alleged mistreatment of one of its own users does not amount to "exclu[sion of] its competitors." *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1141 (9th Cir. 2022). Nor is this case like *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022), which found that LinkedIn had potentially engaged in unfair competition by blocking competitors from using "otherwise public data." *Id.* at 1193-94. This Court held that *hiQ Labs* is inapposite because Meta has not "excluded Dash.fi from accessing or analyzing public information." Order at 12.

The three Section 2 theories that Dash.fi raised in its preliminary injunction reply are deficient for other reasons. Dkt. 27 at 15-17. First, Dash.fi argues Meta violated Section 2 by refusing to deal with Dash.fi. *Id.* at 16. But this Court held that Meta lawfully refused to deal with Dash.fi. Order at 10. Citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), Dash.fi also implies that Meta's refusal to deal cost Meta "short-term revenue" and does not make economic sense unless Meta had an anticompetitive purpose. Dkt. 27 at 16; *see Aspen Skiing Co.*, 472 U.S. at 608 (a monopolist "elect[ing] to forgo these short-run benefits" to "reduc[e] competition . . . over the long run" may suggest unlawful refusal to deal). But Dash.fi does not plausibly plead that Meta forwent short-term revenue. To the contrary: the Complaint alleges that, after Meta restricted the use of the Dash.fi Card, advertisers kept buying Meta advertising using other payment methods, Compl. ¶¶ 25, 58—suggesting that there was no interim revenue loss to Meta. Plus, Dash.fi's chargeback program, which Meta allegedly stopped when it stopped accepting Dash.fi's Card, had already cost Meta at least $35 million, *id.* ¶¶ 15, 24, 68, 81(a). Dash.fi's own allegations therefore show that Meta's "purpose was greater profits in both the short and long terms"—defeating an unlawful refusal-to-deal claim. *Qualcomm*, 969 F.3d at 994.

Second, Dash.fi attempted a tying theory, arguing that "Meta used control of platform access to steer advertisers to its own payment products." Dkt. 27 at 16. The Complaint forecloses this theory. A tie requires that a seller "force the buyer into the purchase of a tied product that the

buyer either did not want at all, or might have preferred to purchase elsewhere on different terms," *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 995 (9th Cir. 2023) (citation omitted). The Complaint instead alleges that Meta directed advertisers to pay with a number of methods besides the Dash.fi Card, including "other non-Dash.fi credit cards," Compl. ¶¶ 25, 34, 41, 45. It does not allege that anyone was forced to buy anything from Meta, or use any particular method of payment.

Finally, Dash.fi argued that "deceptive statements about a rival" can violate Section 2 *if* such statements are "clearly false, clearly material, likely to induce reasonable reliance, and [were] made to buyers without knowledge of the subject matter." Dkt. 27 at 17 (citing *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997)). Dash.fi fails its own test. *American Professional* recognizes that disparagement may be anticompetitive, but only where a plaintiff shows the statements meet "*all* six elements"—the four Dash.fi referenced in its reply plus the elements that the deceptive statements "continued for prolonged periods" and are "not readily susceptible of neutralization." 108 F.3d at 1152. Dash.fi is far from pleading either these elements or that it is Meta's rival, *supra* Part I.

### C. Dash.fi Does Not Plead A UCL Fraudulent Prong Claim

Dash.fi devotes a single sentence to its UCL fraud claim: Meta's conduct is "likely to deceive reasonable advertisers by concealing the true reasons for banning the Dash.fi Card and by implying that the ban is neutral, operational, or security-related when its purpose is to prevent chargeback disputes relating to invalid-traffic charges." Compl. ¶ 84. This theory fails.

To plead a UCL fraud claim, a plaintiff must allege with particularity that it is "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by a defendant's conduct. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *see Bodenburg v. Apple Inc.*, 146 F.4th 761, 770-71 (9th Cir. 2025) (UCL fraud claims are subject to Rule 9(b)). To the extent that Dash.fi is relying on the statements, it does not plead that they are false or misleading, *supra* Part I.B, nor has it satisfied Rule 9(b)'s requirements, *supra* Part I.D. If Dash.fi is instead claiming that Meta's "ban" is deceptive, it has not pleaded how or why, or that the ban is pretextual. Dash.fi instead assumes, without identifying any supporting facts, that Meta's true "purpose" was to obstruct advertisers'

ability to dispute "invalid-traffic charges." Compl. ¶ 84.

If Dash.fi is alleging a fraudulent concealment theory based on Meta "concealing the true reasons for" the "ban," *id.*, this theory also fails. An omission is actionable only if it is "contrary to a representation actually made by the defendant, or [is] an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (citation omitted). Dash.fi pleads no duty to disclose, or affirmative statements rendered misleading by an omission.

Dash.fi also does not plead its *own* reliance. "[C]ourts have recognized that UCL fraud plaintiffs must allege their own reliance—not the reliance of third parties—to have standing under the UCL." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1156 (N.D. Cal. 2019) (internal quotations omitted); *23andMe*, 356 F. Supp. 3d at 910-11; *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326-27 & n.10 (2011) ("UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity" of statement). Dash.fi does not allege it was motivated to take any action in reliance on Meta's alleged fraud. To the contrary, Dash.fi claims it has known the "true reasons" for Meta banning the Card, Compl. ¶ 84; its "suspicions that Meta was targeting [Dash.fi] were confirmed," *id.* ¶ 48; and Meta's cease-and-desist letter disclosed the chargebacks issue, *id.* ¶ 50. Even in the cases where courts do not apply the "'majority' rule" of first-party reliance, they still require a plaintiff plead the alleged fraud induced customers to withhold trade. *See KT Enters. LLC v. Comp360, LLC*, 751 F. Supp. 3d 999, 1003-05 (C.D. Cal. 2023). Dash.fi does not plausibly plead customer reliance. *Supra* Part I.C.

## IV. DISMISSAL SHOULD BE WITH PREJUDICE

The Complaint should be dismissed with prejudice because "amendment would be futile." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 & n.8 (9th Cir. 1990) (citation omitted). To the extent the claims are based on the alleged Card ban and blocks, this Court has held those theories are not likely actionable, Order at 10, 12, and Dash.fi provided no indication in either the voluminous evidence it submitted in support of its preliminary injunction motion or at the hearing that it could transform its suit into the rare case where the Court should impose a duty to deal, *supra* Part III.B. And to the extent the claims are based on Meta's alleged misrepresentations, the Complaint does not plausibly plead they caused the asserted injuries, *supra* Part I.C, or that the

statements themselves are actionable, *supra* Part I.B. On causation, Dash.fi cannot plead facts that are inconsistent with the factual record developed at the preliminary injunction phase, where the Court concluded that the statements did not cause irreparable harm and are not sufficiently causally "link[ed] to" "customers' concerns." Order at 8-9. And the non-actionable nature of the statements will not change upon amendment; indeed, this Court has denied leave to amend negligent misrepresentation claims "as to . . . statements" that it concluded were not misrepresentations. *Dey v. Robinhood Mkts., Inc.*, 780 F. Supp. 3d 882, 892-93 (N.D. Cal. 2025).

Nor can Dash.fi cure the Rule 9(b) pleading defects. Dash.fi's prior filings show that it cannot reliably add more detail about any statements: (1) for the October 2025 and August 15 statements, Dash.fi provided no copy of either communication, Order at 3, 8; Dkt. 14-3 ¶¶ 31-32, 48; (2) for the "confirmed compromise" and "suspicious payment" statements, Dash.fi provided only customers' reports of what "Meta's internal team" or a "Meta contact" had said, Dkt. 14-16 at 4; Dkt. 14-20 at 2; and (3) for the "virtual bank" statement, Dash.fi provided only its employee's relay of a customer's report, Dkt. 14-17 at 2. As this Court has warned, a plaintiff must complete its investigation "before filing suit, not after." *x.AI Corp. v. OpenAI, Inc.*, 2026 WL 1718645, at *4 (N.D. Cal. June 15, 2026) (citation omitted).

Finally, Dash.fi chose not to amend its Complaint with the benefit of the Order and preliminary injunction briefing. Although Meta asked Dash.fi if it would amend to try to cure the Complaint's defects and obviate needless motion practice, Dash.fi declined. Jennings Decl., Exs. 1 & 2. It told Meta that "Dash.fi may amend its Complaint once as a matter of course within 21 days after service of a motion under Rule 12(b), at which time we will notify you if Dash.fi will amend the Complaint." *Id.*, Ex. 2. Not only do Dash.fi's actions show a surprising lack of urgency despite its claim it faces imminent extinction, they are needlessly costly. If Dash.fi had allegations that can salvage its deficient claims—deficiencies of which Dash.fi is well aware from the Order and prior briefing—it surely would have offered them by now. Dash.fi's conduct belies that it has viable additional allegations.

**CONCLUSION**

The Court should grant Meta's motion to dismiss with prejudice.

Dated: November 16, 2026

Respectfully submitted,

By: /s/ Sonal N. Mehta
Sonal N. Mehta (Bar No. 222086)
sonal.mehta@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Molly Jennings (*pro hac vice*)
molly.jennings@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6443
Facsimile: (202) 663-6363

*Attorneys for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this sixteenth day of November, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.

/s/ Sonal N. Mehta
Sonal N. Mehta